UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KIRK SKINNER,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>NEWMONT USA LIMITED, a Delaware Corporation,<br><br>　　　　　　　Defendant. | Case No. 3:19-cv-00453-KJD-WGC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

　　　Before the Court is Defendant's Motion for Summary Judgment (ECF #37). Plaintiff responded in opposition (ECF #40) and Defendant replied (ECF #43).

　　　I.　　Factual and Procedural Background

　　　This Americans with Disabilities Act ("ADA") action arises from the termination of Plaintiff Kirk Skinner's ("Skinner") employment with Defendant Newmont USA Limited ("Newmont"). Newmont "is the world's leading gold company and a producer of copper, silver, zinc, and lead." NEWMONT'S VISION, https://www.newmont.com/about-us/default.aspx (last visited March 11, 2021). Prior to working at Newmont, Skinner worked in a mine in Montana. (ECF #37, at 3). In January 2006, Skinner suffered an injury at the Montana mine and was diagnosed with degenerative disc disease. Id. Skinner was concerned that he might need to consider a new career but based on his lack of education or qualification for other types of work, he remained a mechanic. (ECF #37-1, at 15–16). Skinner began working at Newmont as an underground mechanic in February 2007. (ECF #37, at 3). When Skinner filled out his Newmont employment paperwork, he disclosed that he had a 10% disability rating but had no work limitations and did not require any accommodations. Id. Skinner worked at Newmont for nine years, apparently without incident, until October 2016 when he made a complaint about a

comment made to him by a co-worker. Id. The comment was prompted by Skinner standing around, not helping his co-workers move equipment. Id. Dennis Zimmerman ("Zimmerman"), one of Newmont's employment relations representatives, led the investigation into Skinner's allegations. Id.

During the investigation, Skinner sent Zimmerman an email, on October 26, 2017, stating in part that "[s]ince my back surgery some years ago, which has resulted in a permenant [sic] disability, I have been living with chronic pain which causes loss of sleep, difficulty standing for long periods, difficulty sitting for long periods and have noticed that I need to take more breaks recently." (ECF #37-1, at 65). Skinner also noted that he did not like to take pills "which could cloud [his] judgment" and asked if there were any "programs from Newmont such as pain management or anything that could help." Id. Zimmerman and Newmont interpreted this email to mean that Skinner was indicating he could not physically perform the duties of his job and was requesting an accommodation. (ECF #37, at 4). Skinner claims that he was not stating that he could not physically perform his job duties, he only wanted to inquire about potential pain management programs Newmont might offer or be permitted to take additional breaks. (ECF #40, at 6). After all, Skinner had been performing his job duties for nearly ten years at that point. Id.

After receiving what Zimmerman interpreted as a request for disability accommodation, Zimmerman informed Skinner that he would have to undergo a medical evaluation before he would be allowed to return to work. (ECF #37, at 4). On November 1, 2016, Skinner was evaluated by Dr. Brent Black, M.D. ("Dr. Black"). Id. Dr. Black filled out Skinner's Medical Return to Work form, stating that Skinner may return with a Level 3 Restriction. Id. With a Level 3 Restriction, Skinner was not medically cleared to lift, pull, or push objects weighing more than 50 pounds and was to take back stretching breaks three times per day for 10-15 minutes. Id. at 5. Skinner met with Newmont officials, including Zimmerman, after his appointment with Dr. Black. Id. According to Newmont, this restriction exceeded the essential duties of Skinner's job. Id. The essential functions of a Newmont mechanic include being able to push, pull, and lift up to 100 pounds for anywhere between 3%-15% of the workday. Id.

Additionally, mechanics must be able to stoop, kneel, crouch, crawl, and twist for up to 33% of the workday. Id.

During the meeting, Skinner filled out the paperwork required to be placed on paid indemnity leave for 52 weeks. Id. at 6. On the form, Skinner described his injury as degenerative disc disease and signed that he was applying for benefits on account of total disability. Id. On the form Skinner also stated that Dr. Frances Ponce, M.D. ("Dr. Ponce") indicated that Skinner had become unable to perform the essential functions of his job on October 25, 2016. Id. On November 21, 2016, Zimmerman sent Skinner an email informing him that if he received a restricted duty release, he should contact his supervisor to see if he could be accommodated. Id. Skinner responded and asked Zimmerman to explain to him the Newmont policy regarding restricted and light duty. Id. Zimmerman provided Skinner with Newmont's forms explaining injury policy and asked Skinner to call him so he could explain. Id. Skinner did not call, but indicated that he had not received a change in restricted duty and had another appointment later in January. Id.

On January 27, 2017, Dr. Ponce evaluated Skinner again. Id. at 8. This time, instead of giving Skinner a Level 3 Restriction, Dr. Ponce checked the box that states "Patient is totally unable to perform his/her job duties at this time." Id. Skinner signed the form, indicating that he understood and agreed with the information provided by Dr. Ponce. Id. On May 24, 2017, Skinner was evaluated by Dr. Ponce again with the same result. Id. Dr. Ponce made the same finding, checking the box indicating that Skinner was totally unable to perform his job duties. Id. Skinner again signed the form. Id. Skinner claims that he did not agree with Dr. Ponce's May 24 finding that he was unable to perform his work duties but signed the form anyway so Newmont would pay him. Id. at 9. Skinner did not tell anyone at Newmont that he did not agree with the doctor's findings before litigation ensued. Id. Skinner met with the doctor again on August 1, 2017 where he received and signed another form stating he was unable to perform his job duties. Id.

Skinner's 52-week indemnity period was expiring and on September 23, 2017, Skinner received a letter from Newmont stating that his indemnity benefits would be exhausted on

- 3 -

October 30, 2017. Id. The letter also stated that "[i]f you believe you can return to work and perform the essential functions of your job with or without a reasonable accommodation, please contact us ***immediately***." Id. (emphasis in original). Skinner responded to the letter indicating that he wished to return to work or extend his benefits through other means, such as the Family Medical Leave Act. Id. The Newmont representative requested an in-person meeting with Skinner to discuss his options, but Skinner refused to meet without a witness present and expressed his desire to continue communicating exclusively through email. Id. at 10. Newmont continued with the emails and explained exactly what information Skinner would have to provide to determine if an accommodation was possible. Id. Prior to Skinner's October 30, 2017 doctor's appointment, Newmont reached out again stating that the previous evaluations showed that Skinner was totally unable to perform his job duties and again requested information helpful to determine if Skinner could perform his duties with or without a reasonable accommodation. Id. at 10–11. Skinner's response did not address all of Newmont's requests, but did indicate that Skinner might be able to perform his duties with reasonable accommodations "that will not create a financial burden on the company, such as: team lift, hoists, cranes, hand dollies, and carts which the company already has on the work site." Id. at 11. Newmont representatives responded stating that without the specifics of Skinner's disability they could not suggest accommodations and asked Skinner to take his job description with him to his next appointment so the doctor could make a final determination about whether he could perform the essential duties of his job. Id. Skinner did not take the job description with him and was once again deemed totally unable to perform the duties of his job. Id.

The parties disagree over how exactly Skinner's employment ended. Skinner claims that he was terminated while Newmont argues that Skinner resigned. Newmont employees continually asked Skinner for specific details regarding his ability to perform the essential duties of his job and to cooperate in the interactive process. (ECF #37-1, at 132–38). Skinner expressed that he thought he was participating in the interactive process and that he would be terminated as soon as his medical leave expired. Id. If that were the case, Skinner indicated that he would need to pick up his personal items from the Newmont site. Id. at 136. A Newmont employee emailed

Skinner on October 31, 2017, indicating that they had received the previous medical evaluation stating that Skinner was totally unable to perform his job duties and asked if there was any additional information about Skinner's potential to perform his duties. Id. at 134. The email also shows that Skinner was scheduled for another medical evaluation on January 8, 2018. Id. Skinner responded on the same day, stating "When can I pick up my personal items from the worksite? I am in town for a limited time and do not like my investment to be held hostage since due to previous emails that Newmont terminated my employment yesterday." Id. at 133. The parties then arranged for Skinner to recover his personal items and final paycheck. Id. at 132–33. Later, on November 29, 2017, Skinner emailed stating that he had not received a termination letter and requested documentation that his employment had ended. Id. at 132. Newmont responded, stating that "[t]he benefits group has mailed final documentation since your termination was due to medical reasons." Id.

Skinner filed his complaint on September 14, 2018. (ECF #1, at 7). He brought claims for disability discrimination and failure to accommodate in violation of the ADA and retaliation in violation of the ADA. Id. at 4–6. The retaliation claim was dismissed in this Court's order on August 2, 2019. (ECF #23). Newmont, after completing discovery, then brought its motion for summary judgment. (ECF #37).

II.   Legal Standard

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See FED. R. CIV. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the

mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "Where evidence is genuinely disputed on a particular issue—such as by conflicting testimony—that 'issue is inappropriate for resolution on summary judgment.'" Zetwick v. Cnty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (quoting Direct Techs., LLC v. Elec. Arts, Inc., 836 F.3d 1059, 1067 (9th Cir. 2016)).

### III. Analysis

To prevail on a failure to accommodate in violation of the ADA claim, a plaintiff must demonstrate that: "(1) he is disabled within the meaning of the ADA; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodations; and (3) he suffered an adverse employment action because of his disability." Allen v. Pac. Bell, 348 F.3d 1113, 1114 (9th Cir. 2003). Newmont concedes that Skinner is disabled within the meaning of the ADA but argues that he is not a qualified individual able to perform the essential functions of his job and that he did not suffer an adverse employment action because of his disability. If the facts, viewed in the light most favorable to Skinner, do not show that Skinner was a qualified individual and that he suffered an adverse employment action, then summary judgment will be granted to Newmont.

The ADA defines a qualified individual as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The Equal Employment Opportunity Commission has "promulgated a regulation expanding this definition" that the Ninth Circuit has adopted. Johnson v. Bd. of Trustees of Boundary Cty. Sch. Dist. No. 101, 666 F.3d 561, 564–65 (9th Cir. 2011). The regulation, 29 C.F.R. § 1630.2(m), gives a two-part analysis. Courts must "first determine whether the individual satisfies the prerequisites of the job; more specifically, whether 'the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires.'" Anthony v. Trax Int'l Corp., 955 F.3d 1123, 1128 (9th Cir. 2020) (quoting 29 C.F.R. § 1630.2(m)).

Second, courts "determine whether, 'with or without reasonable accommodation,' the individual is able to 'perform the essential functions of such position.'" Id. (quoting 29 C.F.R. § 1630.2(m)).

Skinner satisfies the first prong. He satisfies the prerequisites of the job and is qualified to be a mechanic, as evidenced by his nine-year tenure in the position. Whether Skinner can perform the essential functions of the position with or without accommodation is the question. Newmont states that the essential functions include being able to push, pull, and lift up to 100 pounds for anywhere between 3%-15% of the workday and stoop, kneel, crouch, crawl, and twist for up to 33% of the workday. Newmont argues that originally Skinner could lift up to 50 pounds, but his degenerative condition got worse, and his doctor reported that he was totally disabled and not able to perform any of his job duties. Thus, because he could not perform any duty, he could not perform the essential duties. Newmont also argues that Skinner agreed with the total disability diagnoses by signing the medical evaluation forms. Skinner argues that he never agreed with his doctor that he was totally disabled or that his condition became worse and made him totally disabled. He claims he only signed the medical evaluation forms so Newmont would pay him but that he is not totally disabled.

The Court finds that Skinner is not a qualified individual because his medical evaluations indicate that he was totally disabled and unable to perform any job functions. This case is similar to Kennedy v. Applause, Inc. 90 F.3d 1477 (9th Cir. 1996). In Kennedy, the district court granted summary judgment for the defendant after finding that the plaintiff was totally disabled and therefore not a qualified individual under the ADA. Id. at 1480. The plaintiff's testimony that she was not totally disabled was outweighed by her doctor's testimony that she was and her indication on her state disability claim forms that she was totally disabled. Id. The plaintiff's only evidence was her uncorroborated and self-serving testimony. Id. at 1481. The Ninth Circuit found that the plaintiff's testimony did not present a sufficient disagreement to require submission to the jury and that there was no genuine dispute that the plaintiff was totally disabled from performing her job. Id. Skinner has done the same here. The only evidence that he is not totally disabled is his own testimony. That evidence is made less reliable when looking at

Skinner's disability benefits applications which state that he became unable to perform the essential functions of his job on October 25, 2016. These applications also weigh against Skinner's argument that he is able to perform the functions of his job because he had performed them for nearly ten years. Skinner's medical records show that originally Skinner could lift up to 50 pounds, but his condition became worse, and he was no longer able to perform the functions of his job or even lift up to 50 pounds. Additionally, Skinner's doctor filled out his notice of disability report for the Arizona Department of Economic Security and stated that Skinner would be able to work as of "never." The medical evaluations that Newmont relied on indicate that Skinner was totally disabled, unable to return to work, and not a qualified individual under the ADA.

These facts are not genuinely in dispute and Skinner's response to Newmont's argument that Skinner is not a qualified individual focuses on whether the essential job functions are truly essential, not whether Skinner was totally disabled. Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" Cleveland v. Pol'y Mgmt. Sys. Corp., 526 U.S. 795, 805–06 (1999) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "An ADA plaintiff bears the burden of proving" that []he is a qualified individual. Id. Skinner has not met that burden. Additionally, an ADA plaintiff "cannot simply ignore the apparent contradiction that arises out of the earlier . . . total disability claim. Rather, []he must proffer a sufficient explanation." Id. Skinner has not provided any explanation as to why his disability benefits applications forms indicate that he is totally disabled but his testimony in this case is the opposite. He simply repeats his claim that he only signed his check to receive his paycheck. That does not explain the contradiction between his disability claim forms and his testimony. Therefore, because the admissible evidence shows that Skinner's degenerative condition got worse, he became totally unable to perform the functions of his job, and that he would never be able to return to work, Skinner is not a qualified individual under the ADA. Because Skinner is not a qualified individual, his failure to accommodate claim fails and summary judgment for Newmont is appropriate.

Skinner's discrimination claim in violation of the ADA fails for the same reason. The ADA states that no "covered entity shall discriminate against a *qualified individual* with a disability." 42 U.S.C. § 12112(a) (emphasis added). As such, the Ninth Circuit applies the same prima facie elements, requiring a plaintiff to prove that "(1) he is disabled under the Act, (2) a 'qualified individual with a disability,' and (3) discriminated against 'because of' the disability." Bates v. United Parcel Service, Inc., 511 F.3d 974, 988 (9th Cir. 2007) (quoting Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999)). Because Skinner cannot show that he is a qualified individual, his discrimination claim fails.

The evidence, seen in the light most favorable to Skinner, shows that Skinner is not a qualified individual under the ADA. Therefore, summary judgment for Newmont is appropriate.

IV.     Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#37) is **GRANTED**.

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendant and against Plaintiff.

Dated this 12th day of March, 2021.

                                                                          _____
                                                                          Kent J. Dawson
                                                                          United States District Judge